**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CORY PRIMO,<br><br>Defendant. | ) | Criminal Action No. 24-CR-10176-AK |

**MEMORANDUM AND ORDER ON**
**DEFENDANT'S MOTION FOR SENTENCE REDUCTION**

**ANGEL KELLEY, D.J.**

Defendant Cory Primo pled guilty to conspiracy to commit sex trafficking and was sentenced to a term of 70 months imprisonment on December 9, 2025. Now, Ms. Primo moves pro se to reduce her sentence pursuant to 18 U.S.C. 3582(c)(1)(A). For the following reasons, Ms. Primo's Motion for Sentence Reduction [Dkt. 324] is **DENIED**.

## I. BACKGROUND

On August 28, 2025, Defendant Primo pled guilty to conspiracy to commit sex trafficking in violation of 18 U.S.C. § 1594(c). [Dkt. 200]. On December 9, 2025, she was sentenced to a term of 70 months imprisonment, followed by 60 months of supervised release, and $5,000 in restitution. [Dkt. 248]. Ms. Primo started serving her sentence in January 2026. She has been serving her sentence at FCI Tallahassee.

While incarcerated, Ms. Primo has made numerous requests to the Federal Bureau of Prisons' ("BOP") medical staff to treat various issues, including pain in her back and shoulder. Alleging that her medical care has been insufficient, Primo requested compassionate release from the Warden for FCI Tallahassee. The Warden denied her request on August 20, 2026. [Dkt.

324-2 at 3]. On September 15, 2026, Primo filed a Motion for Sentence Reduction pursuant to 18 U.S.C. 3582(a)(1)(A). [Dkt. 324].

According to Ms. Primo, she was in a car accident in 2016, which led to pain and various injuries. [Dkt. 324-1 at 3]. Ms. Primo reports having left-sided paralysis and nerve damage, including sciatica in her back, hip, and leg. [Id. at 4]. She further reports an injury to her left rotator cuff and alleges she has experienced unexplained seizures since being incarcerated. [Id. at 3-4]. Ms. Primo alleges that she was scheduled to see two specialists in March and April 2026 to examine her spine and shoulder but missed the appointments because of her incarceration. [Id. at 4]. According to Ms. Primo, the specialists were to conduct imaging to determine whether she needed surgery. [Id.]. Ms. Primo alleges that, despite repeated requests, FCI Tallahassee has not provided her with appropriate medical treatment and is not equipped to handle her medical needs. [Id.]. For that reason, she seeks early release.

Along with her Motion, Ms. Primo submitted various pieces of evidence, including medical records from before her incarceration, copies of emails requesting medical care from FCI Tallahassee Health Services, and a one-paragraph letter from Ms. Primo's bunkmate. [Dkts. 324-1; 324-2]. Ms. Primo's bunkmate indicates that Ms. Primo is experiencing significant pain and "needs help with everyday task[s]." [Dkt. 324-1 at 1].

On October 19, 2026, Ms. Primo submitted an addendum to her motion, which explained that she also injured her foot while working in the FCI Tallahassee kitchen. [Dkt. 329 at 2]. The addendum includes copies of Ms. Primo's BOP medical records and further emails sent to FCI Tallahassee Health Services. [Dkts. 329; 329-1]. On November 5, 2026, the Government opposed Ms. Primo's Motion. [Dkt. 331]. Along with its opposition, the Government submitted a declaration from Dr. John L. Meade, a Regional Physician for the BOP. [Dkt. 331-1]. Based

upon Ms. Primo's medical records, personal treatment of Ms. Primo, and a discussion with the clinical director of FCI/FDC Tallahassee, Dr. Meade described Ms. Primo's medical conditions and the relevant treatments she has received since being incarcerated. [Id.].

## II. DISCUSSION

Generally, a federal court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). However, it may do so if "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable," it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). "That is a demanding standard," Fernandez v. United States, 608 U.S. 411, 422-23 (2026), which the movant has the burden to meet, see United States v. Galiany-Cruz, No. 22-1196, 2023 WL 6458535, at *1 (1st Cir. June 6, 2023) (citing United States v. Newton, 996 F.3d 485, 488 (7th Cir. 2021)).

Although the statute itself does not define "extraordinary and compelling reasons," the Supreme Court has explained that "'[e]xtraordinary' means 'most unusual,' 'far from common,' and 'having little or no precedent,'" while "'[c]ompelling' means 'tending to convince or convert by or as if by forcefulness of evidence.'" Fernandez, 608 U.S. at 423 (internal citations omitted). The statute also directs courts to the Sentencing Commission's current policy statement for the proper considerations. See 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13(b).

The United States Sentencing Guidelines ("the Guidelines") identifies categories of circumstances that may qualify as extraordinary and compelling. Two of these categories are relevant to Ms. Primo's Motion. The Court will start by addressing Section 1B1.13(b)(1)(B) of the Guidelines, then will move to Section 1B1.13(b)(1)(C).

### A. Section 1B1.13(b)(1)(B)

Under Section 1B1.13(b)(1)(B), a defendant may qualify for sentence reduction where;

(B) The defendant is—
(i) suffering from a serious physical or medical condition,
(ii) suffering from a serious functional or cognitive impairment, or
(iii) experiencing deteriorating physical or mental health because of the aging process
(iv) that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. 1B1.13(b)(1)(B).

Assuming without deciding that her medical conditions are a "serious physical or medical condition" within the meaning of Section 1B1.13(b)(1)(B), Ms. Primo still does not meet the requirements of Section 1B1.13(b)(1)(B). The record does not show that Ms. Primo has been unable to provide self-care while incarcerated. In fact, Dr. Meade "believe[s] that there is nothing about Ms. Primo's current medical conditions which would prevent her from providing self-care within the environment of her correctional facility." [Dkt. 331 at 5].

Although Ms. Primo's bunkmate cursorily alleges that she needs help with everyday tasks, this assertion lacks any specificity and is contradicted by the record. Ms. Primo's medical record from October 26, 2026, notes that she is a "'well-developed, well-nourished inmate who is awake, alert, and in no acute distress,' and that she had '[a]ppropriate grooming and hygiene.'" [Dkt. 331-1 ¶ 8]. Her BOP medical records also noted that she has full movement of her spine and intact gross sensory and motor functions. [See e.g., Dkt. 329-1 at 17]. Further, in his letter denying Ms. Primo's request for compassionate release, the FCI Tallahassee Warden noted that she is "able to independently attend to [her] daily living activities." [Dkt. 324-2 at 3]. Finally, Ms. Primo has been well enough to work in the FCI Tallahassee kitchen. [Dkt. 329]. Because there is no evidence that Ms. Primo's medical conditions "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," sentence reduction is not appropriate under Section 1B1.13(b)(1)(B).

### B. Section 1B1.13(b)(1)(C)

Under Section 1B1.13(b)(1)(C), a defendant may qualify for sentence reduction where

> [t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

U.S.S.G. 1B1.13(b)(1)(C). "The government acknowledges that [Ms. Primo's] condition may qualify as a condition requiring specialized care." [Dkt. 331 at 6]. Even with that admission, Ms. Primo has not demonstrated that she has not received medical care for her conditions.

Ms. Primo complains of insufficient medical care for her spine injury, shoulder pain, and seizures. However, she has received treatment for all of these conditions while at FCI Tallahassee. For her pain, Ms. Primo is prescribed pain medication, which is available for her to take twice a day. [Dkt. 331-1 ¶ 5]. As for her spine, an MRI of Ms. Primo's spine has been ordered, and, upon completion, the BOP will order a consult with a spinal surgeon to determine the need for surgery. [Id. at ¶ 6].

Although Ms. Primo did not complain of seizures at her intake screening, several months after she arrived at FCI Tallahassee, she claimed to have suffered from seizures since 2022. [Id. at ¶ 4]. To address these concerns, Dr. Meade reviewed Ms. Primo's outside medical records. [Id.]. When Ms. Primo's medical records did not contain a history or diagnosis of seizure disorder, her seizure diagnosis was discontinued. [Id.].

As Ms. Primo mentioned in her addendum, this summer, she dropped a heavy trash can on her foot. After this incident Ms. Primo was sent to a Tallahassee hospital for evaluation and treatment. [Id. at ¶ 7]. Ms. Primo's ongoing "left foot pain is being treated with pain medications, accommodation via a wheelchair, and a podiatry visit has been ordered and is pending." [Id.].

These facts make clear that Ms. Primo has received and continues to receive medical attention for her medical conditions, including specialized treatment at an outside facility. Ms. Primo has not presented any evidence to the contrary. In fact, BOP medical records, which Ms. Primo submitted along with her addendum, substantiate Dr. Meade's declaration. Should Ms. Primo's conditions worsen and require a higher level of medical care than is available at FCI Tallahassee, the BOP has specialized medical centers which are fully equipped to address complicated medical situations, including the need to provide advanced spinal surgery and any required rehabilitation. [Id. ¶ 10]. Because Ms. Primo has received medical treatment for her conditions and BOP is able to provide more intensive medical care should the need arise, she does not meet the requirements for sentence reduction under Section 1B1.13(b)(1)(C). While the Court acknowledges the pain Ms. Primo is experiencing because of her medical conditions, she has not proven that her medical conditions meet the "demanding standard" required for sentence reduction. Fernandez, 608 U.S. at 422-23.

## III. CONCLUSION

For the foregoing reasons, Ms. Primo's Motion for Sentence Reduction [Dkt. 324] is **DENIED.**

**SO ORDERED.**

Dated: November 13, 2026

/s/ Angel Kelley
Hon. Angel Kelley
United States District Judge